UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EPS LOGISTICS CO., ET AL. | CIVIL ACTION NO. 6:21-cv-01003 |
| VERSUS | JUDGE SUMMERHAYS |
| COX OPERATING, L.L.C. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

The plaintiffs, EPS Logistics Company and Expeditors & Production Services Company (collectively "EPS"), filed their petition for suit on open account in the 15th Judicial District Court, Lafayette Parish, Louisiana.[1] The defendant, Cox Operating, LLC, removed, alleging that this court has subject-matter jurisdiction under 43 U.S.C. § 1349(b)(1) because the dispute underlying this lawsuit arises out of and in connection with operations conducted on the Outer Continental Shelf involving the exploration for and development and production of minerals.[2] Cox then filed a motion to transfer the case to the United States District Court for the Eastern District of Louisiana, under 28 U.S.C. § 1404(a).[3] In support of that motion, Cox argued that another lawsuit between the same parties arising out of the same

---

[1] Rec. Doc. 1-1 at 3-6.

[2] Rec. Doc. 1 at 2.

[3] Rec. Doc. 7.

business relationship had already been filed in the Eastern District and that it would be both just and convenient for the parties to try the two suits in the same court. Before deciding the motion to transfer, this Court issued a *sua sponte* order, requiring the parties to brief the issue of subject-matter jurisdiction.[4] For the following reasons, this Court now finds that the court has subject-matter jurisdiction over this lawsuit.

## Background

In the petition, EPS alleged that they maintained open accounts with Cox "for the provision of lease operating services."[5] EPS further alleged that Cox failed to pay the full amount invoiced for those services. Although the petition stated that spreadsheets listing the outstanding invoices were attached,[6] no spreadsheets were filed along with the removal notice,[7] and the petition made no mention of the Outer Continental Shelf or the exploration for or production of oil, gas, or other minerals. Therefore, it was not facially apparent that the court had subject-matter jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), as Cox alleged. This

---

[4] Rec. Doc. 13.

[5] Rec. Doc. 1-1 at 3, 4.

[6] Rec. Doc. 1-1 at 4, 5.

[7] A copy of the petition with the exhibits attached was filed in the record along with Cox's response to this Court's briefing order. Rec. Doc. 18-2 at 1-15.

Court therefore issued a jurisdictional briefing order, requiring Cox to submit facts supporting federal-court jurisdiction and affording the plaintiffs an opportunity to respond.[8] The parties responded to the briefing order.[9]

## Law and Analysis

### A. Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. Absent jurisdiction conferred by statute, district courts lack power to consider claims."[10] Federal courts have subject-matter jurisdiction over civil actions presenting a federal question[11] and those in which the amount in controversy exceeds $75,000 and the parties are citizens of different states.[12] Under the OCSLA, federal courts have jurisdiction over "cases and controversies arising out of, or in connection with. . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental

---

[8] Rec. Doc. 13.

[9] Rec. Docs. 18, 20, 23.

[10] *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). See, also, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[11] 28 U.S.C. § 1331.

[12] 28 U.S.C. § 1332.

3

Shelf, or which involves rights to such minerals. . . ."[13] A suit is presumed to lie beyond the scope of federal-court jurisdiction until the party invoking federal-court jurisdiction establishes otherwise.[14] Similarly, any doubts regarding whether removal jurisdiction is proper should be resolved against federal-court jurisdiction.[15] The party invoking the court's subject-matter jurisdiction has the burden of establishing the court's jurisdiction.[16] Thus, when a lawsuit is removed from state court, as this suit was, the removing party – Cox in this case – must bear that burden.[17] Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[18]

EPS did not invoke OCSLA jurisdiction in their petition. It is well-settled, however, that plaintiffs need not expressly invoke the OCSLA in order for its jurisdictional provision to apply.[19] Furthermore, the OCSLA's jurisdictional grant

---

[13] 43 U.S.C. § 1349(b)(1)(A).

[14] *Kokkonen v. Guardian Life*, 511 U.S. at 377; *Howery v. Allstate*, 243 F.3d at 916.

[15] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[16] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Gaitor v. Peninsular & Occidental S. S. Co.*, 287 F.2d 252, 253 (5th Cir. 1961).

[17] *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).

[18] 28 U.S.C. § 1447(c).

[19] *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013); *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988).

is broad, covering a "wide range of activity occurring beyond the territorial waters of the states."[20]

Cox responded to this Court's briefing order, arguing that its relationship with the plaintiffs grew out of its offshore operations. Cox submitted the affidavit[21] of its president and chief operating officer, who stated that Cox acquired several hydrocarbon-producing assets in the Gulf of Mexico in 2016, including wells, platforms, caissons, and other offshore structures. Cox then contracted with EPS to provide Cox with dock and dispatching services, assisting in the transportation of personnel, goods, and equipment to offshore locations. Absent Cox's acquisition of the offshore assets, it would not have needed to do business with EPS. In 2018, Cox acquired additional offshore wells and worksites, which furthered its need for EPS's services. The affidavit also correlated certain invoices attached to EPS's petition to Cox's offshore operations.

In response, EPS argued that all of the services provided to Cox were shore based, i.e., "done on land and not at the actual production facilities (well sites)."[22]

---

[20] *In re Deepwater Horizon*, 745 F.3d at 163 (the statute is "straightforward and broad"); *Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215 (5th Cir. 2016) ("the statutory grant of subject matter jurisdiction over cases and controversies 'arising out of or in connection with' operations involving resource exploitation on the Shelf is straightforward and broad"); *Barker v. Hercules Offshore, Inc.*, 713 F.3d at 213 ("[t]he jurisdictional grant in OCSLA is broad.").

[21] Rec. Doc. 18-1.

[22] Rec. Doc. 20 at 4.

EPS submitted the declaration of their general manager[23] who explained that the services provided were for dockside facilities, equipment, warehouse space, staging areas, docks, and labor for stevedoring activities in Cameron, Intracoastal City, Venice, and Fourchon, including but not limited to dispatchers and consultants who coordinated dockside activities, monitored the flow of goods, and carried out paperwork functions. Based on this evidence, EPS argued that the court lacks OCSLA jurisdiction because no actual physical activities were performed by EPS employees on Cox's offshore locations.

In furtherance of their argument, EPS argued that they mistakenly attached to their original complaint some invoices for offshore work at South Marsh Island and West Cameron locations. After the briefing order was issued, EPS filed an amended complaint,[24] which deleted those invoices from the exhibit attached to their complaint. In their briefing, EPS stated that they are "not pursuing Cox for any labor actually performed by any EPS personnel at any of Cox's offshore well sites"[25] and urged this Court to consider only the exhibit attached to the amended complaint. EPS thus admitted that, in their original complaint, they were seeking to recover sums owed on invoices for work actually performed offshore. Consequently, if

---

[23] Rec. Doc. 20-1 at 2.

[24] Rec. Doc. 17.

[25] Rec. Doc. 20 at 10.

6

OCSLA jurisdiction were dependent on the satisfaction of a situs requirement, EPS's original complaint met that requirement.

It is axiomatic, however, that when a lawsuit is removed from state court to federal court, subject-matter jurisdiction is evaluated on the basis of the claims set forth in the state court complaint as it existed at the time of removal.[26] For that reason, post-removal events generally do not deprive the court of jurisdiction.[27] Therefore, EPS's correction of its mistake in preparing the exhibit attached to its original complaint has no effect on the jurisdictional analysis.

Furthermore, EPS's substantive argument lacks merit. There is no situs requirement for OCSLA jurisdiction.[28] To the contrary, the OCSLA's jurisdictional grant covers not only cases arising geographically on the OCS but also those arising "in connection with" operations thereon.[29] "OCSLA jurisdiction requires only a but-for connection, meaning the facts underlying the action would not have occurred but

---

[26] *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal."); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed.").

[27] *Louisiana v. American Nat. Property Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014).

[28] *In re Deepwater Horizon*, 745 F.3d at 164. See, also, *Hammer v. PHI, Inc.*, No. 6:16-1048, 2016 WL 7029354, at *6 (W.D. La. Oct. 14, 2016), report and recommendation adopted, 2016 WL 7031774 (W.D. La. Dec. 1, 2016).

[29] *Sam v. Laborde Marine, L.L.C.*, No. H-19-4041, 2020 WL 59633, at *2 (S.D. Tex. Jan. 6, 2020) (citing 43 U.S.C. § 1349(b)(1)).

7

for an operation on the Outer Continental Shelf."[30] The term "operations" is defined as "the doing of some physical act."[31]

In this case, Cox conducted operations on the OCS. But for those operations, Cox would not have entered into a contract with EPS, and the dispute regarding the payment of EPS's invoices would not have arisen. Because the dispute between EPS and Cox arises out of and in connection with Cox's operations conducted on the OCS for the development of mineral resources, the dispute falls within the scope of the OCSLA's jurisdictional statute.[32] While some contractual disputes might be too attenuated from the exploration for or production of oil or gas from offshore installations to support OCSLA jurisdiction,[33] this Court finds that, under the facts of this case, Cox's offshore operations are central to the parties' contractual dispute. Cox's operations would not have been able to continue without EPS's holding up their end of the bargain. Without the work performed by EPS, vessels would not

---

[30] *Sam v. Laborde Marine, L.L.C.*, 2020 WL 59633, at *2 (citing *In Re Deepwater Horizon*, 745 F.3d at 163).

[31] *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) (quoting *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir.1988)).

[32] *EP Operating Ltd. Partnership v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).

[33] See, e.g., *Enven Energy Ventures, LLC v. Gemini Insurance Company*, No. 6:17-CV-01573, 2018 WL 3203605, at *3 (W.D. La. June 8, 2018), report and recommendation adopted, 2018 WL 3203464 (W.D. La. June 28, 2018) (a first-party insurance dispute); *Brooklyn Union Exploration, Inc. v. Tejas Power Corp.*, 930 F.Supp. 289, 292 (S.D. Tex. 1996) (a dispute over the price to be paid for already produced natural gas).

have been loaded or unloaded, goods and personnel would not have been transported to offshore locations, vessels would not have had docking space, and paperwork necessary for regulatory compliance would not have been completed. All of these functions – and others – provided by EPS were sufficiently necessary to and intertwined with Cox's production of oil and gas from offshore installations to support OCSLA jurisdiction. Accordingly, this Court finds that the court has subject-matter jurisdiction over this action under the OCSLA's jurisdictional grant.

Signed at Lafayette, Louisiana, this 30th day of June 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE